**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re NOREEN JEAN RENIER, | ) | Case No. 07-61602-LYN |
| | ) | |
| Debtor, | ) | |
| | ) | |

## <u>MEMORANDUM</u>

This matter comes before this court on a motion ("the Motion to Enforce") by the debtor, Noreen Jean Renier ("Renier"), to enforce a consent order ("the Consent Order") against John Merrell ("Merrell").  This court concludes that it did not have subject matter jurisdiction over the motion ("the Original Motion") which the Consent Order resolved.  Accordingly, this court concludes that it does not now have subject matter jurisdiction over the Motion to Enforce.  The Motion to Enforce will be dismissed for lack of subject matter jurisdiction.   The Consent Order will be vacated on the court's motion.

*Facts*

1

Renier is a psychic who asserts that she has paranormal powers.  Merrell is a skeptic who believes that it is his moral charge to disprove the validity of those powers.  The conflict between these parties makes Charles Dickens' *Bleak House* read like a novella.

Renier and Merrell have been engaged in litigation intermittently for more than twenty-five years.  In 1985, Renier filed a libel suit against Merrell in the State Court for Jackson County, Oregon ("the Oregon Action").  In 1986, Judgment issued in favor of Renier in the amount of $25,000.00.

In 1989, Merrell filed a petition in bankruptcy with the Clerk of the Bankruptcy Court for the Eastern District of Tennessee.  Renier filed a proof of claim and prevailed on a complaint objecting to the discharge of the debt arising from the Oregon Action.  In 1990, she recorded a judgment lien on Merrell's real property in Tennessee.

In 1991, Merrell filed an action against Renier in the Circuit Court for Orange County, Florida ("the Florida Action").   The parties eventually settled the matter.  Merrell withdrew his complaint in the Florida Action and Renier released the lien on his real property in Tennessee. One condition of the settlement was that neither party would make public reference to the Florida Action.

In 2005, Renier published a book entitled *A Mind for Murder*, which included two chapters that discussed the Florida Action.  Merrell filed a complaint against Renier with the Clerk of the United States District Court in Washington State ("the Washington Action").  The Court awarded Merrell approximately $1,000.00 in damages and $39,000.00 in legal fees.

On August 28, 2007, Renier filed a petition initiating the above-styled bankruptcy case. She scheduled no real property.   She scheduled personal property including "Copyright on

currently discontinued book, Mind for Murder" and "Claims and potential claims against John Merrell / Jurisdiction as yet undecided".  She scheduled the fair market value of each of these assets as "unknown".

The Chapter 7 trustee inquired into the value of these assets and concluded that they were of no value to the estate.  On September 24, 2009, he filed a notice of intent to abandon the estate's interest in the copyright and the potential claims against Merrel.  On February 26, 2008, after Merrell objected to the notice of intent to abandon property of the estate, a number of hearings were held and eventually an auction was held for the copyright.  The Chapter 7 trustee filed a notice of assets, reduced the copyright to cash, distributed the funds and filed a final report which was approved by the United States trustee.

On January 8, 2010, Renier filed the Original Motion seeking sanctions for violation of the automatic stay.  On February 25, 2010, before this court took the matter under submission, the parties appeared before the court and represented that they had reached an agreement concerning the Original Motion.  Both Renier and Merrell approached the bench and personally assured the court that they intended to abide by the terms of the agreed order.  On June 3, 2010, the parties represented that they had fashioned an order that they could both sign.   On June 21, 2010, the Consent Order was entered on docket.  The Consent Order prohibited the parties from engaging in certain acts and contained a provision for liquidated damages in the amount of $30,000.00 for violation of the order.  On July 8, 2010, Renier, *pro se*, filed the Motion to Enforce the Consent Order.  A hearing was eventually held on the Motion to Enforce the Consent Order and the court took the matter under submission.

### *Jurisdiction*

3

I.

"Federal bankruptcy courts, like the federal district courts, are courts of limited jurisdiction." Canal Corp. v. Finnman ( In re Johnson ), 960 F.2d 396, 399 (4th Cir.1992).  A court must have jurisdiction over the subject matter of a dispute before it may entertain that dispute.  It is necessary to first consider whether this court has jurisdiction over the subject matter of the dispute.

Questions concerning subject-matter jurisdiction may, and must, be raised by the court. See Wright, Miller, Cooper & Freer, Federal Practice and Procedure: Civil 3d, § 3536, (2008). (A court is under a continuing obligation to determine whether it has subject matter jurisdiction over matters that come before it.)

Subject matter jurisdiction may be raised at any time, even after entry of judgment. Arbough v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 1240 (2006) (An objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by the court on its own initiative, at any stage in litigation, "even after trial and the entry of judgment.").  Also see Lovern v. Edwards, 190 F.3d 648(4th Cir. 1999) (The absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence.) and Folden v. U.S., 379 F.3d 1344, 1354 (Fed. Cir. 2004) (Subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.).

Nor can parties consent to subject matter jurisdiction where there is none.  Subject matter jurisdiction cannot be conferred by the parties, nor can a defect in subject matter jurisdiction be waived by the parties; accordingly, questions of subject matter jurisdiction may be raised at any point during the proceedings and may, or, more precisely, must be raised *sua sponte* by the court.

4

Brickwood Contractors, Inc. v. Datanet Engineering, Inc., 369 F.3d 385 (4th Cir. 2004).

II.

The immediate matter before the court is the Motion to Enforce the Consent Order.  The court concludes that it did not have jurisdiction over the subject matter contained in the Original Motion which gave rise to the Consent Order and that, therefore, it does not have jurisdiction to entertain the Motion to Enforce.[1]

----

[1]     Even if this court had jurisdiction over the facts alleged in the Consent Order and the Motion to Enforce, judgment could not be entered in favor of Renier.  The burden of proof in an action under Section 362(k) is either a preponderance of the evidence, see, e.g., In re Johnson, 501 F.3d 1163 (10th Cir. 2007) or clear and convincing evidence, see, e.g., In re Bennett, 135 B.R. 72 (Bankr. S.D. Ohio 1991) and is on the moving party. Renier would have both the burden of coming forward with evidence and proving by a preponderance of the evidence that Merrell had violated the provisions of the Consent Order.

        The overwhelming problem with Renier's case is that this court did not find her (or Merrell, for that matter) to be a credible witness.  There are reasons for this conclusion, beyond her demeanor.  First, she mislead the court when she indicated that she intended to abide by the agreed order that would be executed by the parties. The following exchange took place between her (and Merrell) and this Court at the bench at the February 25, 2010, hearing on the Original Motion:

        COURT: . . . And the purpose of this is to keep any conflict from coming up between the two of you again. And that's the goal that we're all working for.  Now, if anything happens, I want you to contact your lawyer immediately. Don't call the other one. Don't call the other one's lawyer. Call your lawyer and let him tell you what to do. *Don't jump out on your own to try and get a jump on the other one*. This should be the end of you all's conflict and you begin your life from today forward without each other being involved.  Do you have any questions or anything you want to ask the Court about what is going on so that you won't have any problem in the future? [Emphasis added.]

        MR. MERRELL: I do not, Your Honor. I do not.

        MS. RENIER: I'm okay, too.

        COURT: . . . I do hope when you people leave the courtroom, that you will go your separate ways and not have any contact or conflict with each other except through your attorneys.   Fair enough?

        MR. MERRELL: Fair enough.

        MS. RENIER: Fair Enough.

Transcript of Hearing, February 25, 2010. p. 7.   This court stated: "Don't jump out on your own to try and get a jump on the other one."  Renier stood not five feet away and agreed to abide by this directive.

        Her testimony in support of the Motion to Enforce evidences that she did not intend at any time to abide by the memorialization of the court's words (in the Consent Order) or her own response to those words.  Renier's Exhibit 1 was a print-out of an internet page dated March 6, 2010.  So, Renier began accumulating evidence for further action against Merrell no more than nine days after she indicated to this court that she intended to withdraw from conflict.   And she continued to collect additional internet pages for the next three months during which time the parties were negotiating the provisions and wording of what would eventually become the Consent Order.

        Further, when it came time for her to file a motion based on the Consent Order, she ignored the requirements therein.

        Paragraph 8 of the Consent order provides that:

        In the event of a breach of this agreement the parties agree that the party who breaches the agreement shall pay to the other party liquidated damages of $30,000.00 and be subject to injunctive relief to prevent further violation. Breach of this agreement shall constitute an intentional tort and be

We turn now to whether this court had jurisdiction over the subject matter embodied in the Original Motion.  United States District Courts "have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings

---

nondischargeable in any subsequent bankruptcy of either party. *In the event of a perceived breach of this agreement the non-breaching party shall notify his or her attorney of the perceived breach and said attorney shall notify the attorney for the other party of the perceived breach.* The party alleged to have breached the agreement shall then have 30 days to respond. If a satisfactory response is not made the non-breaching party is then relieved of all further obligations under this order.

(Emphasis added.)   When Renier filed the Motion to Enforce the Consent Order, she did so without informing Merrell's counsel that she perceived Merrell to have breached the agreement.

Incredibly, at the hearing on the Motion to Enforce, she asserted that she was not required to inform Merrell's counsel of the perceived breach.  At that hearing, the following exchange occurred between Renier and her counsel:

COUNSEL FOR RENIER: Regarding the order, and I'm going to refer you to paragraph eight, was it your understanding that prior to filing the motion to enforce that we're discussing today, that you needed to have an attorney advise [Merrell's counsel] of the substance of that motion 30 days before it was filed.?

RENIER: It was not my understanding, no, sir.

Clearly, when Renier filed the Motion to Enforce, she necessarily gave evidence that she believed, and perceived, that Merrell had breached the Consent Order.  Clearly, the Consent Order required her to inform Merrell through counsel that such was her belief.   These facts notwithstanding, she did not attempt to acquire counsel so that she could inform Merrell according to the Consent Order that she had endorsed.  She did not attempt to inform Merrell's counsel of the perceived breach.  Further, in spite of this obvious obligation, she testified under oath that she was not bound by the provision in the Consent Order to inform Merrell though counsel of the perceived breach.

Instead of informing Merrell's counsel of the perceived breach, she filed pleadings in an effort to begin litigation that would, she hoped, result in a $30,000.00 judgment in her favor against Merrell.  This court is convinced that is the only reason she agreed to the terms of the Consent Order.  Instead of taking steps to work out the perceived breach, Renier filed the Motion to Enforce a mere 16 days after the Consent Order was entered on docket.

Nor does this court believe that Renier carried her burden of proof sufficient to prevail on the merits.  The order was arguably made effective from February 25, 2010, even though it was not fashioned, or entered on docket, until June 21, 2010.  Renier's evidence consisted primarily of pages printed from Merrell's websites that talk about her.  The problem is that the pages do not indicate what portion of those pages was added after February 25, 2010.  Information, once placed on the internet cannot be so easily withdrawn.  Search-engine servers world wide collect the information and store it for extended periods of time.  So, if information is found on the internet, it cannot easily be determined when it was placed there.

Merrell testified that he began removing information regarding Renier the weekend after the February 25, 2010, hearing and that the only information that remained as of June 21, 2010, the date of entry of the Consent Order on docket, was information that was allowed under Paragraph 3 of the Consent Order.

And, It would appear that Renier also talked about Merrell after February 25, 2010.  According to Merrell, and exhibits he filed, a search of "John Merrell" on a search engine will yield websites run by Renier even though the name "John Merrell" does not appear on the website.  As Merrell explained, the name is embedded in the code that is used to build the website.

Finally, this court would not accept as true allegations that certain information was posted on the internet at a certain time without the testimony of an expert witness.   And, in this case, the only witness called by Renier was herself.  Consequently, she failed to prove by the preponderance of the evidence that Merrell violated the Consent Order and her Motion to Enforce would be denied, were it not dismissed for lack of subject matter jurisdiction.

arising under title 11, or arising in or related to cases under title 11." 1334(a)&(b). The United

States District Court may provide that any or all cases under title 11 and any or all proceedings

arising under title 11 or arising in or related to a case under title 11 shall be referred to the

bankruptcy judges for the district. 28 U.S.C. §§ 157(a). The United States District Courts for

the Western District of Virginia have referred bankruptcy matters to the Bankruptcy Courts for

the Western District of Virginia by order. This court has jurisdiction over all cases under title 11

and any or all proceedings arising under title 11, or arising in or related to a case under title 11.

It is proper to consider each of these four bases of jurisdiction in turn.

## A.

First this bankruptcy court has jurisdiction over cases under title 11. A case under title

11 consists of all pleadings, proceedings and orders that are part of a bankruptcy case. A case

under title 11 consists of the whole of these things that concern a single estate, and not just one

of them. No single motion constitutes a case under title 11. The Original Motion is not a case

under title 11.

## B.

Second, this bankruptcy court has jurisdiction over matters that arise under title 11. A

matter that "arises under title 11" is one that is created by the bankruptcy code. See 1 Collier on

Bankruptcy, "Jurisdiction", ¶ 301.[3][c][I] (16th ed. rev.) A motion for damages based on a

violation of the automatic stay is an example of a motion that arises under title 11. It is created

by Section 362(k) which provides in relevant part that "an individual injured by any willful

violation of a stay provided by this section [362] shall recover actual damages, including costs

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The

7

Original Motion pleaded that Merrell had violated the automatic stay found at 11 U.S.C. § 362(a).[2]   But this is not the end of the inquiry.  In deciding whether there is subject matter jurisdiction, allegations stated in complaint are taken as true, and jurisdiction is decided on the facts of the pleadings.  <u>Folden</u>, 379 at 1354.  Courts may properly look beyond a complainant's jurisdictional allegations and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists.  <u>Bowyer v. U.S.Dept. of Air Force</u>, 875 F.2d 632 (7th. Cir. 1989).

In the Original Motion, Renier asserted that:

. . . [Merrell] "misappropriat[ed] . . . the title of her book, *A Mind For Murder*, (a copyright asset of the bankruptcy estate, and the subject of the up coming abandonment hearing) as a website [website provided] to which he refers any one attempting to access her website, where he has complied misinformation, disinformation, distortion, and falsehood to discredit her, to publicly vilify her for filing bankruptcy, and to attempt to interfere with and destroy her livelihood."

---

[2]        Subsection 362(a) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>        (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>        (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>        (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>        (4) any act to create, perfect, or enforce any lien against property of the estate;
>        (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>        (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>        (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
>        (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Paraphrasing, the motion asserts that (1) Merrell set up a website that used the same name as the name of her book, (2) the website contains misinformation about Renier; (3) the website vilifies Renier for filing bankruptcy; and (4) Merrell attempted to interfere with Renier's attempts to earn a livelihood.  There are no other factual allegations in the Original Motion.

The facts as alleged might give rise to a cause of action under non-bankruptcy law, but they do not give rise to an action for violation of the automatic stay.

The automatic stay may be characterized as three stays in one.  First, it is a stay against certain *in personam* acts against the *debtor*.  <u>See</u> 11 U.S.C. § 362(a)(1),(2)&(6)-(8).  Second, it is a stay against certain *in rem* acts against *property of the debtor*.  <u>See</u> 11 U.S.C. § 362(a)(5). Finally, it is a stay against certain *in rem* acts against *property of the estate*.  <u>See</u> 11 U.S.C. § 362(a)(2)-(4).

Prohibited *in personam* acts against a debtor are found at 362(a)(1),(2)&(6)-(8).  Section 362(a)(1) prohibits "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."  The Original Motion does not allege any of the foregoing.  Section 362(a)(2) prohibits "the enforcement, against the debtor of a judgment obtained before the commencement of the case under this title."  The Original Motion does not allege that Merrell attempted to enforce a pre-petition judgment against Renier post-petition.  Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title".  The Original Motion does not allege such an act. Section 362(a)(7)

9

prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the

case under this title against any claim against the debtor."    The Original Motion does not allege

such an act.  Section 362(a)(8) prohibits  "the commencement or continuation of a proceeding

before the United States Tax Court concerning a tax liability of a debtor that is a corporation for

a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor

who is an individual for a taxable period ending before the date of the order for relief under this

title."  The Original Motion does not make reference to a proceeding before a United States Tax

Court.  The Original Motion does not allege facts that would, if true, violate the *in personam*

prohibitions in Section 362(a).

 We turn next to prohibitions against *in rem* acts against property of the debtor.  Section

362(a)(5) prohibits "any act to create, perfect, or enforce against property of the debtor any lien

to the extent that such lien secures a claim that arose before the commencement of the case under

this title".  No such lien exits and none was alleged.  No such act is alleged in the Original

Motion.  This court does not have jurisdiction over the Original Motion under Section 362(a)(5).


 Finally we consider prohibitions of *in rem* acts against property of the estate provided in

Section 362(a)(2)-(4).  Preliminarily, it is not clear that a debtor has standing to bring an action

under Section 362(k) based on an allegation that a party has violated the automatic stay with

respect to property of the estate, because it is not clear that a debtor would be damaged by an act

against property of the estate.  As noted, Section 362(k) provides that "an individual injured by

any willful violation of a stay provided by this section shall recover . . . damages . . ."  In order to

prevail under Section 362(k), a debtor must be injured by the act in violation of the stay.   But an

act directed at property of the estate that is administered for the benefit of creditors is not an act that could injure the debtor.  Only the creditors could be damaged by such an act.

Even if Renier does have standing to bring an action based on a violation of the stay against property of the estate, she has not pleaded facts that would permit her to prevail.  Section 362(a)(2) prohibits "the enforcement . . .  against property of the estate, of a judgment obtained before the commencement of the case under this title".  No such judgment exits.  The Original Motion does not plead facts sufficient for a cause of action under Section 362(a)(2).  Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate".  While the Original Motion asserts that Merrell has engaged in acts that are critical of the book, *A Mind for Murder*, and has taken steps to publish that criticism, the acts do not constitute an attempt to obtain possession of the book or exercise control over it.  Section 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate".   No such lien exits.  The Original Motion does not plead facts sufficient for the court to find that Merrell has engaged in an act that violates the prohibition of certain enumerated acts against property of the estate.

A review of the Consent Order confirms that Renier never intended to bring an action based on Section 362(a).  There are nine paragraphs in the Consent Order.  None of the paragraphs contain a provision that reflects the settlement of an claim for violation of the automatic stay.  Paragraph One is the only paragraph that restricts the actions of the parties.  It provides that neither Merrell or Renier shall make further public comment, or encourage third parties to make public comment about the other.  There is nothing in Section 362(a) that prohibits a creditor from making public comment concerning a debtor.  Paragraph One does not

11

reflect a settlement of an act in violation of the automatic stay.

Paragraph Six requires Merrell to transfer the domain name, www.amindformurder.com to Renier for $300.00. This requirement concerns property of Merrell that is not property of the estate. Paragraph Six does not reflect a settlement of an act in violation of the automatic stay.

The other seven paragraphs in the Consent Order concern matters wholly unrelated to the automatic stay. Paragraph Two permits Renier to continue publishing her book. Paragraph Three permits Merrell to make one post on his website concerning his view regarding the two chapters in Renier's book that concern the Florida Action. Paragraph Four contains mutual releases. Paragraph Five provides that Merrell shall furnish copies of subpoenaed documents to the Chapter 7 trustee and to no other party. Paragraph Seven permits Merrell to conduct certain research and also permits his co-author to write the same book, but restricts the co-author from mentioning or compensating Merrell. Paragraph Eight provides for liquidated damages in the amount of $30,000.00 for violation of the Consent Order. Paragraph Nine grants this court jurisdiction over the enforcement of the Consent Order.[3]

The Consent Order reflects the pleadings in the Original Motion and, like the Original Motion, does not concern violations of the automatic stay. The subject matter contained in the Original Motion does not arise under title 11.

C.

Third, this Court has jurisdiction over proceedings that arise in a case under title 11. A proceeding that "arises in" a case under title 11 is one that exists only in the context of a bankruptcy case but does not arise under title 11. See In re Wood, 825 F.2d 90, 96-97 (5th Cir.

---

[3]    As noted above, parties cannot grant a court subject matter jurisdiction if none exists.

1987) ("The meaning of 'arising in' proceedings . . . seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases.  In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.")

The causes of action arising from the alleged facts do not arise in bankruptcy.  Further, the alleged facts, if true, might possibly give rise to a cause of action under non-bankruptcy law. The facts alleged do not give rise to a cause of action "arising in a case" under the bankruptcy code.

### D.

Finally, this court has jurisdiction over proceedings that are related to a case under title 11.  A proceeding that is "related to a case under title 11" is one that integrally affects the bankruptcy process.  The Fourth Circuit Court of Appeals, in a chapter 11 case defined related-to jurisdiction as follows:

> [F]or "related to" jurisdiction to exist at the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process-there must be a close nexus to the bankruptcy plan or proceeding. Practically speaking, under this inquiry matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.

Valley Historic Ltd. Partnership v. Bank of New York (In re Valley Historic Ltd. Partnership), 486 F.3d 831 (4th Cir. 2007).   In Chapter 11, an estate is administrated through the confirmed plan.  In Chapter 7 case the estate is liquidated by the Chapter 7 trustee who then distributes the proceeds.  It follows that in Chapter 7, a bankruptcy court has related to jurisdiction over those matters that would affect the liquidation of the estate and the distribution of the proceeds.  In this case, the Original Motion and the Consent Order concerned matters that have not, and will not,

13

affect the administration of the Chapter 7 estate.  In fact, the Chapter 7 trustee has filed a final report in spite of the fact that the matter has not been resolved.

After the parties to this dispute informed the court that they believed that they could agree upon a consent order, the Fourth Circuit Court of Appeals issued an opinion making clear that bankruptcy courts do not have jurisdiction over matters that do not affect the administration of a bankruptcy estate.  See In re Kirkland, 600 F.3d 310 (4th Cir. 2010).  In Kirkland, the debtor borrowed money to attend college.  Her Chapter 13 plan provided for the payment of all of the principal that she owed the creditor.  The debtor completed her payments under the plan, and (wrongly) believed that all principal had been paid to the creditor and that she only owed interest on the debt.  The Chapter 13 trustee had incorrectly returned about $4,700.00 to the debtor. After the case was closed, the creditor began billing the debtor for the balance of the claim that had not been paid through the Chapter 13 plan.   The debtor subsequently filed an adversary complaint seeking a determination that the loan principal had been paid in full and that the debt had been discharged except to the extent that post-petition interest had accrued.  The creditor argued that the debtor still owed the unpaid principal.  The bankruptcy court agreed.  The bankruptcy court also awarded interest but declined to award attorney's fees.

The creditor appealed to the District Court arguing that the bankruptcy court did not have jurisdiction over the post-petition interest and attorney's fees.  The District Court held that the bankruptcy court had jurisdiction over the accrued post-petition interest and attorney's fees.  The holding was based in part on the fact that "the post-petition interest and collection costs sought by [the creditor] in the Bankruptcy Court, for example, would not have even been at issue were it not for the maladministration of the bankruptcy plan and the initial bankruptcy proceeding."

14

Quoted in <u>Kirkland</u>, 600 F.3d at 316.

The creditor appealed to the Fourth Circuit Court of Appeals.  That Court  held that the

bankruptcy court did not have jurisdiction, including related-to jurisdiction, to determine how

much post-petition interest the debtor owed the creditor because "[t]he claim exist[ed]

irrespective of Kirkland's bankruptcy and had no effect on that proceeding or her bankruptcy

estate."  In holding that the bankruptcy court in <u>Kirkland</u> did not have related-to jurisdiction over

the interest and attorney's fees, the Fourth Circuit Court of Appeals made it clear that bankruptcy

courts do not have related-to jurisdiction over matters that would exist irrespective of the

bankruptcy case and that have no effect on the administration of the bankruptcy estate.

In the case at bar, the facts alleged in the Original Motion could give rise to a claim

irrespective of Renier's bankruptcy case.   Further, neither the Original Motion nor the Consent

Order could possibly have any effect on the administration of this bankruptcy estate.  Neither

played a part in the administration of the estate as demonstrated by the fact that the Chapter 7

trustee has filed his final report and the parties are still prosecuting this dispute.  It follows that

the causes of action that could arise from the facts alleged in the Original Motion could not give

rise to a proceeding that is related to this bankruptcy case.

III.

A federal court is obliged to dismiss a case whenever it appears the court lacks subject

matter jurisdiction.  <u>Lovern v. Edwards</u>, 190 F.3d 648(4th Cir. 1999).   <u>Also</u> <u>see</u> Fed. Rule Civ.

Proc. 12(h)(3) as made applicable in this matter by Fed.R.Bankr.P.  9014(c).  ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action.")

15

The Court has determined that it does not have subject-matter jurisdiction over the Original Motion or the Motion to Enforce the Consent Order.   Accordingly, the Consent Order will be vacated and the Motion to Enforce will be dismissed for lack of subject matter jurisdiction.

Further, there is now pending on the court's calendar a motion for sanctions, also filed by Renier.  That motion is also based on alleged violation of the Consent Order.   This court concludes that it does not have jurisdiction over that motion.  That motion will be dismissed by separate order.

### Conclusion

Renier and Merrell have engaged in litigation in two United States District Courts, two United States Bankruptcy Courts, and one State Court in venues ranging from Florida to Washington State.  While reason would require them to withdraw each from the other's life as expeditiously as possible, it is apparent that neither is capable of introspection and that neither approaches matters concerning the other with even a modicum of reason.  This court is not so naive to believe that the parties will now go their separate ways.

These facts notwithstanding, this court has jurisdiction only over Renier's bankruptcy case and "related" matters that must be resolved in order to administer the estate.  The jurisdiction of this court does not extend to every corner of the parties' ongoing dispute.   The Consent Order entered on June 21, 2010, on the docket in this case pursuant to Renier's Original Motion entered on January 8, 2010, on the docket in this case shall be vacated.   The instant Motion to Enforce the Consent Order shall be dismissed.  Further, Renier's motion for sanctions based on alleged violation of the Consent Order shall be dismissed.

16

Appropriate orders shall issue.

Upon entry of this memorandum, the Clerk shall forward copies to the debtor, Mitch

Garbee, Esq., Dale Reese Jensen, Esq., and the Chapter 7 trustee.

Entered on this 21st day of March, 2011.

William E. Anderson
United States Bankruptcy Judge

17